The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Amy C. Lannard presiding. Good afternoon. The court is taking up the case of, or case number rather, 4-230648, People of the State of Illinois v. Raheem King. Counsel for the appellant, if you please state your name for the record. Your Honor, Gregory Peterson for Mr. King. Counsel for the appellee, if you'll please state your name for the record. My name is Claire Wasilek Connelly. Thank you. And Mr. Peterson, you may proceed with argument. Thank you, Your Honor, and may it please the court, counsel. My name is Gregory Peterson. I work for the Office of the State Appellate Defender, and I represent Raheem King today. I had four issues in the briefing. I'm planning to spend the majority of this oral argument on the first issue, but I would like to touch on the fourth issue before I'm done. Stating the obvious, if this court has any questions about two or three, I would be glad to answer them. There is a right, a due process right, to be, to stand trial free from restraints. To stand trial as a free man until the presumption of innocence is overrun. This is only overcome on a showing of manifest necessity on a case-specific need. Now, this right traces back to before the founding. I'm not citing it to cases from the King's bench because they're, to some extent, unrelated to the question we have today, but it's an old right, and Mr. King did not receive that hearing. I argue that this is reversible error, and I do want to stress that I am arguing this under the second prong of the plain error rule. Now, the state says that no court has ever found second prong plain error in a lack of abuse hearing. This is incorrect. In Ripetoe, the court reversed on those grounds, and in Ripetoe, the third district was dealing with shackling at a crankle hearing after a finding of guilt. Not here, where it's the actual guilt stage at which Mr. King was shackled. Shackling of a defendant without a showing of manifest necessity offends the dignity of the trial. It undercuts the presumption of innocence. There are also arguments about it affecting the defendant's ability to assist his counsel. Here, we don't have any record evidence of Mr. King struggling to assist his counsel, but I'd like to stress that this will occur in the majority of cases. This is, by definition, the kind of thing that would not make it into an appellate record, but what we have from this appellate record is the dignity of the proceedings compromised as Mr. King stood trial shackled by the very judge that would be determining whether or not he was guilty of the charged offenses. Counsel, you mentioned, and I think I correctly, that the only thing that you're arguing here is presumption of innocence was compromised, not that he couldn't participate or assist his counsel. Is that right? Not quite, your honor. There's three components. There's the presumption of innocence, the dignity of the proceedings, and the ability to assist counsel. I'm arguing the first two of those three. All right. I want to ask you a little bit about the presumption of innocence being compromised, and what in the record are you arguing shows that? Your honor, I think it's shown from the fact of the shackling. We have the language of Justice Steigman's concurrence in Luna. We have the Illinois Supreme Court's language from Inres Staley. We have even this court's language in Bell, a published case from 2020, saying that this is a due process error of significant magnitude that- Well, counsel, if I can interrupt you, though, the Luna decision, though, involved first prong, plain air. That's correct, your honor. And I understand that you didn't decide that on the basis of second prong. At the same time, because you reversed, there was no language either way as to second concurrence does not deal with the issue of second prong. But what I'm saying essentially about second prong plain error here is in Justice Steigman's concurrence, in all of the cases where this is coming up, Illinois' appellate courts have expressed frustration with the fact that this error keeps occurring, that due process, whether or not the error is reversible, that due process is being violated, and that these defendants are not receiving a fair trial. My argument today is that finding reversible error, finding second prong plain error is the way to make these errors stop happening. It's the way to- I want to make sure I understand that. You're saying, you're asking this court to rule that it's automatic when there's not a booze hearing for reversal. With a few caveats, yes, your honor. Isn't that contrary to the Supreme Court's case in Allen? It is, your honor, but my two responses to that is that, first of all, I believe that Allen is wrongly decided on the grounds of booze. I think booze is the correct decision, and I think Allen's language about it not being per se reversible conflicts with the way booze describes the error. But the second larger concern that I have is that since Allen was decided, the Supreme Court formalized the holding of booze into Rule 430. The Supreme Court has not said since 430 was enacted that this is never second prong reversible per se, and as a matter of fact, I've been unable to find any case of the appellate court that says that in a case where the fact finder knew of the shackling. We have cases, for instance, justice that the state cited in additional authority, in Bell, where there's nothing to suggest that the fact finder knew about that. I think that's not second prong there. If you're worried about the presumption of innocence, but the person who's deciding guilt versus lack of guilt doesn't know, then you would need to show something more. But my argument for second prong, I said it was with a couple caveats. The caveats are since the enactment of Rule 430 and where there is record evidence that the fact finder at trial knew that the restraints were in place. I'd also say that I would also limit it to situations where no booze hearing whatsoever was conducted. This is not an appeal where we are second guessing the Judge Schaefer balanced the booze factors and alleging that she abused her discretion. I'm saying that she did not even give Mr. King the hearing that is mandatory by Illinois Supreme Court rule. 430 is not a rule that says a trial court has to do something upon the motion of the defendant. It's not like Rule 472, where at any moment, either on motion from one of the parties or on the court's own motion, the court can act. This is one that says the moment the court becomes aware that restraints are being used, the court shall conduct a hearing. Here, there was no hearing whatsoever. The closest we came was Judge Schaefer mentioning something that actually weighs in Mr. King's favor. She specifically said that he had behaved well in the courtroom, that to the extent that she had been expecting problems, and I think it's fair to assume that that expectation comes from something she'd been told by the sheriff or jail personnel, the problems didn't arise. There's no hearing, and to the extent that she touched on one of the factors, she touched on a factor that should weigh in Mr. King's favor. Yet, before a single shred of evidence had been presented, before trial had began, she told Mr. King, you will still be in leg shackles. I think this gravely affects the presumption of innocence. I think it gravely affects the dignity of the proceedings in a way that... You argue, though, in your brief, it seems to me at least, and I guess I'll ask you to clarify, it seems you're arguing the impact is on the defendant's own perception of his presumption of innocence versus arguing that, as we would if this occurred in front of a jury, how that might impact the jury. So can you... Am I correct in interpreting your argument correctly first? And then second, can you explain to me why we should consider it from his own perspective versus when we're talking about how the presumption of innocence might be compromised by the restraints, that we're viewing that from a third party's perspective, such as the judge in this case, who's the fact finder in a bench trial? Your Honor, I did argue in my brief that the subjective factors matter. I do think they matter, but I would like to clarify that I'm not only arguing those. I do think the fact that Mr. King was in chains for his trial, the primary way that this court should focus is the effect that this would have on a fact finder. And while that is true, I would like to also point out that this was a recurring trend, that Mr. King was faced with these rulings that, well, not reversible error by their own things. And in fact, in many ways, things that would regularly happen in the course of a trial judge's life, these became reasons for him to believe he wasn't getting a fair trial. And I think he had cause to think so, because the first thing the judge had told him is, you've been safe, you've been well-behaved, you're going to wear chains for your entire trial. That matters. But I would also like to point out that the law is absolutely clear that there's no distinction whether it's a jury or a bench trial here. I understand that the state emphasizes that it's a jury trial at the start of the state's brief, but that simply does not matter under the since Allen and since the codification of Booz and Allen into 430. So this is, to some extent, an open question. Rippetoe found second-prong plain error, but Rippetoe stands alone on that front. And since Rule 430 has been codified, the only instance I've been able to find of a court finding no second-prong plain error, despite the fact that the fact finder observed the shackling, is Owens. And Owens is easily distinguishable on its facts. Mr. Owens was not in shackles until he misbehaved in the courtroom. There's every common-sense reason to believe that the jury would perceive the shackling as a response to what they'd already seen. So I don't think Owens at all controls here, because Mr. Owens started that trial unshackled. Justice Vancell, I believe you're talking, but I can't hear you. Oh, I'm sorry. Can you hear me now? Yes. Okay. Mr. Peterson, the judge in this case would have seen Mr. King in shackles at probably all of the hearings prior to trial. Is that correct? That's right. I believe shackles and two handcuffs, Your Honor. And you're arguing, though, that at the trial, then all of a sudden, because it is a trial, the judge is, that's going to affect his presumption of innocence. And it wouldn't have if he had conducted the hearing or, is that what you're arguing? Yes, Your Honor. I do think- So he wouldn't be prejudiced by seeing him in shackles from the prior hearings? To the extent that the prejudice would exist from the prior hearings, Your Honor, I think that is, to some extent, baked into the system. We allow judges to rule on motions to suppress and then move to the guilt phase. But I would say that the contours of this right, as it's existed for hundreds of years, say that trial is different. Trial is the moment when the, if it's a bench trial, the judge finds facts. And we would never say, for instance, that the evidence was sufficient at a trial because the same judge heard highly incriminating evidence at a suppression hearing. So Judge Schaefer, I think her decision here is implicated by the shackling at trial, even though she would have seen it beforehand. Trial is different and matters in this regard. I would also like to touch on the issue of remedy here. And that's because, particularly in the third district appellate court, there's been a split developing over whether remand for a retroactive boost hearing is appropriate or remand for a full retroactive booze hearing is mostly argued for by a single justice. The common thread is, is there an incomplete analysis that needs to be fleshed out or was there no analysis whatsoever? Here, there was no analysis whatsoever. So we would ask this court to reverse and remand for a full new trial before which, and I want to stress in the case of a new trial, Mr. King could absolutely be tried in shackles should the proper showings be made, because that's the thing. Manifest necessity does overcome this centuries-old right, but it's manifest necessity on a case-by-case showing, and Mr. King was denied that showing. So just to summarize what I'm asking for here in terms of second-pronged plain error, it's the fact finder observes the restraints during the evidence phase of trial, the judge is aware of Rule 430, and 430 has been promulgated at the time of the trial. Those are the two things that really matter here. Since the rule has been put into effect and tells judges that the moment they see the shackling, they know they have to do this, and then I do think you'd have to show some prejudice if there's no evidence in the record that the fact finder was aware of the shackling. But I would also like to address the fourth issue in the brief here, the question of whether a conviction that is a triggering offense for mandatory consecutive sentences, whether that means that every offense has to be consecutive to that offense, or whether it means that every offense has to be consecutive even to each other. Here, the state has no case law in support of its position. The changes to the statute change what is a triggering offense, but they don't change what a triggering offense means. And I understand that in terms of Mr. King's outbid, this issue would grant him only paper relief, but I want to stress that this is an important issue that this court need decide in Mr. King's favor, because that's what a triggering offense means. And I used the example in my brief of a defendant who has dozens upon dozens of smaller subsidiary convictions in addition to something larger. This court should not allow, to some extent, the tail to wag the dog. And for those smaller convictions, absent a showing by the judge that they are discretionarily consecutive to drive a defendant's out date. So I think this is very much an important issue that this court need decide. But in terms of Mr. King, the priority remains getting him the fair trial and the due process that he is guaranteed by centuries of law and that have been formalized by the Illinois Supreme Court in Rule 430. The reason that these errors keep happening is because nothing happens after they happen. The verdict stands. And this shackling issue, this lack of a booze hearing, is the kind of thing that is very rarely going to be preserved, because if defense counsel speaks up and says we'd like a shackling hearing, the shackling hearing would happen. Courts, at least when it's brought to their attention, know about the rule. And so I also want to stress that my request that this court find second-pronged reversible error here, as I said in my brief, can be limited also to cases where there's no hearing whatsoever. We're not alleging an abuse of discretion here. We are alleging an abdication of discretion. There was no decision made. And as a result of that, Mr. King's entire trial was held before a judge who the first—essentially the last thing she had said before trial began was, you will be in shackles, just so you're aware. And that is a decision that potentially could be supported. I don't know. We don't have the record. But it's also clear that this is from the rule that this is a finding that needs to be made. The defendant needs to be allowed an opportunity to respond, and the court has to set these findings on the record. So the last thing I will say is that this record is absolutely sufficient for the court to determine that Mr. King was shackled. Judge Schaefer said that he would be shackled. This was never revisited. The burden's on the state to show that something happened out of court or off record, and the state has not a scintilla of evidence on that front. He was shackled. There was no hearing. This is a due process violation and an error, and the way for the court to stop the error from occurring is to find it reversible. If there are no further questions, I'll return on rebuttal. Seeing none, counsel, you'll have time in rebuttal. Ms. Connelly, you may proceed with your argument. May it please the court, counsel. I'd like first like to address what is commonly referred to as the booze issue in this case. The defendant proceeds on three different theories for a reversible error. First, he proceeds under a claim of per se second-pronged plain error. The second way in which he seeks a reversal is under the category of second-pronged plain error. That's what it's commonly referred to. The third way the defendant is seeking reversal is ineffective assistance of counsel. As far as our argument regarding the clarity of the record, I'd like to address that when I speak about the appropriate remedy in this case. Now, as far as the first issue that the defendant raises in this case is he is seeking a finding of per se second-pronged plain error in this case. He cites to one case, but since that case has been decided, that there have been numerous other cases, including this own court in People v. Bell, in which the courts have rejected any per se application of second-pronged hearing. The defendant cannot establish a per se second-pronged plain error occurred in this case. The courts will then go on and look at whether or not on a case-by-case basis, whether or not otherwise there has been second-pronged plain error established. In this case, the courts will look at three different bases. They will look at whether or not there has been a compromise on the presumption of innocence, on the dignity of the proceedings, and whether or not there is any negative impact on the defendant's ability to assist in the trial proceedings. The defendant, in his opening brief, proceeded solely on the compromise of the presumption of innocence. Now, for the first time during the oral argument, defense counsel is suggesting that it was also a compromise of the dignity of the proceedings. So, I would ask this court to reject that claim because it was never raised in his brief. But as far as the presumption of innocence in this case, he relies upon two things that at trial. One is the trial court stating for the record that she had spoken to one of the prosecution witnesses when entering the courthouse that day. And she made that as part of the record just to be fair to both sides. No one objected, no one suggested, and they're not suggesting there right now that the trial trial court in that case was compromised or suggested that the trial counsel was going to rule against the defendant in any way. So, that is not going to be a successful claim. The other claim has to do with the trial court's own examination of the defendant when he testified. And there's extensive case law that talks about that. And that is perfectly acceptable for the trial court to be able to do those two things. And as Yannick pointed out, the defendant is asking this court to institute some type of subjective belief that the defendant believed that the trial court no longer presumed him to be innocent. And instead, what the courts have looked at is whether or not there's been a compromise on the presumption of innocence as well as far as the overall, a more objective view, whether or not the criminal justice system, there's been a compromise in the criminal justice system in the presumption of the defendants being not guilty in these cases or presumption of innocence. So, the defendant cannot succeed in establishing either a second prong error under a rule or under this alternative on a case-by-case basis. The third way that the defendant is seeking to establish relief in this case is by claiming that his trial counsel and his post-trial counsel were ineffective. And there are several reasons why the defendant cannot be successful. For one reason, when we have, when we're looking at ineffective assistive counsel, we're looking at, and the courts have looked at that as somewhat, is akin to whether or not the defendant can establish second prong plain error. So, there's counsel that suggests that holds, I should say, that if you cannot establish second prong plain error, you cannot establish the prejudice prong of Strickland. The other concern that this court recently expressed in People versus Justice, which I did my motion to cite additional authority, was they talked about whether or not the defendant could establish that he could have the burden of showing that he otherwise would have been successful in this claim. So, he has not done so in this case. And then the other way that this court, the defendant has not argued at all in this case is the sufficiency of the evidence. So, commonly when you have a prejudice prong for ineffective assistive counsel, you look at whether or not the strength of the evidence overall. And the defendant does not in any way, shape, or form ask this court to find that the defendant was not, that the evidence was not strong enough for any of these offenses. So, we submit the defendant in all these three different ways that he's trying to have his sentence or his conviction reversed, that he cannot succeed under any of these, in any of these manners. The other way that we're going to look at this case is whether or not what is the appropriate remedy in this case. Now, I want to make it clear that we're saying that the defendant has not established that his case should be reversed in any way. But if this court were to consider whether or not it should be reversed, we submit that a, should be sent back for a retroactive, excuse me, retrospective booze hearing in this case. And the, one of the reasons why it should be short of having a new trial is because the record's really unclear what happened. Now, there's a conversation between the trial court and when, and both parties regarding prior to trial as to whether or not the defendant was going to be shackled in this case or restrained. And the trial court stated that she was, had, was going to have the defendant be wearing leg, leg restraints, but she was not even clear whether or not she was going to be restraining both of the defendant's hands in this case. So what happened is we don't know what happened in this case. There's nowhere in the record, not once during the trial proceedings when the, when the court was hearing evidence, what did we know to what extent the defendant was, or if he was actually restrained. And when, when the, when the trial court was unclear as to actually what the restraint was going to be, that provides an unclear record in this case. And it's, it's very difficult, I think, for this court to find that a retrial is, is, should, is necessary in this case based upon the unclear record in this case. So you, and then you have, when you look at within the trial, in trial proceeding itself, the defendant testified. There's nothing in the record that shows that he was, his motion was compromised at any point when he got up to this witness stand, when he got down from the witness stand. There's absolutely no reference whatsoever that the defendant being restrained in any way, shape, or form. I'm sorry, Your Honor, did you have a question? No, I'm sorry. That's okay. So based upon that, you know, you, he's asking for a new trial on what is essentially an unclear record. And let's, why is it an unclear record? Because defense counsel and post-trial counsel didn't raise these claims. And the defendant who himself filed a pro se post-trial motion in which he raised several claims, he never mentioned at all the fact that he was restrained at any point during the proceedings in this case. With that, we'd ask that the defendant's conviction in this, in sentences in this case be affirmed. As far as the fourth issue that defense counsel mentions, the trial court in this case complied with section 5-8-4 in this case when it imposed a five-year consecutive sentence for the counts of aggravated unlawful restraint, where first degree murder is one of the triggering offenses for the imposition of mandatory consecutive sentences. So when we look at a sentencing statute, we're going to look at the 5-8-4 clearly states that a court shall impose consecutive sentences in each of the following circumstances. When one of the offenses for which the defendant was convicted was first degree murder, and then it goes on to our class X or class one. So in this case, the defendant was convicted of not one but three counts of first degree murder in this case. The statutory provision clearly provides that first degree murder is a triggering offense. There's no separation as to whether or not there's multiple triggering offenses or anything like that. If the defendant is convicted of first degree murder, that triggers consecutive sentences. And I cited to a couple unpublished decisions that have recently interpreted this because the defendant relied upon Whitney, which is a case that came out prior to the statute being changed. And in Griffin specifically, the first district held that a first degree murder conviction triggers 5-8-4 and that this section, quote, mandates consecutive sentences and all other independent charges to which a defendant is sentenced. That clearly provides for the defendant to be sentenced to mandatory consecutive sentences when a triggering offense occurs. In this case, there were three triggering offenses. He was convicted of multiple counts of first degree murder. The plain language of this statute provides for the consecutive sentence in this case for the accounts for unlawful restraint. And the state asked that the defendant's sentences in this case be affirmed. Counsel, you agree there is no published opinions ruling on this issue? Well, I guess it all depends on what you say the issue is. I say there is because when you have these two unpublished cases that have come out recently, I think it was in 2020 and 2021, which talk about the first degree murder now be included as a triggering offense. And then as a result of that, all the other offenses are deemed to be mandatory consecutive. Okay, thank you. Counsel, if I may ask a question, how do you respond to the defendant's argument that on appeal for the first time you distinguish between the two separate offenses of aggravated vehicular hijacking and aggravated unlawful restraint? Yeah, I would submit that there is perhaps a disagreement between the record on what was argued during the closing argument and what we're arguing now. But I think what is clear in this case is that those two offenses occurred consecutive to one another. They did not occur at the same time. So the aggravated vehicular hijacking was complete when the defendant took control of the vehicle in this case. The aggravated unlawful restraint requires detaining the person. The person in this case was the driver that occurred after and separate from the taking control of the vehicle in this case. They constitute separate acts and with separate objectives. Control of the vehicle was complete. And then there was the subsequent act of forcing the driver to remain in the vehicle. And that in itself extends beyond the hijacking. The hijacking had already occurred. The detaining happened after he got control of the vehicle in this case. So therefore, defendant's argument regarding the one act one crime should be rejected in this case. Counsel, the bus driver is not detained or restrained when the defendant here takes control of the vehicle. It doesn't require the driver to do certain things. Correct. The aggravated vehicular hijacking in this case occurred when the defendant took control of the vehicle in this case. And that offense doesn't require control of the driver. It just has to be in the presence or the person has to be nearby. It doesn't require the actual control of the driver in this case. Okay. But it was one continuous act. Do you agree with that? No, I think our argument is it constitutes separate acts in this case. So, because the objectives were different. So, with that, without any other further questions, the people respectfully request that the defendant's convictions and sentencing in this case be affirmed. Thank you. Thank you. Mr. Peterson, Roberto? Yes, Your Honor. I'd like to briefly touch on the two subsidiary issues and then finish with Boos. The state just told you as to the one act one crime that the way she's arguing it now is different from the way they argued it at trial. That's dispositive after Crespo. The state can't change its theory on appeal. It was the exact same evidence. It was the exact same act. I don't think this court has a legal basis to rule that pointing a gun at someone and telling them to drive is not aggravated vehicular hijacking. But it's the same evidence. It's the same crime. It's two convictions. And the state's change of theory on appeal, well, I don't agree with her now. She can't even change it that way. That's specifically what Crespo states. Secondly, on the sentencing issue, the state's proposed rule, to the extent that it's drawn from Griffin and Mischke, renders Griffin bad law under its own logic. The court in Griffin stated the aggregate sentencing range in a way that is only possible if the counts could be run concurrent to each other. I agree that the statutory language has been cleaned up as to what constitutes a triggering offense. But that changes nothing about the way that non-triggering offenses relate to each other. There are dozens, if not hundreds, of cases being decided against Illinois that would change should this court adopt the state's proposed rule. But turning to the Booth issue, first of all, ineffective assistance of counsel. I agree with the state that second pronged plain error and ineffective assistance of counsel run largely on the same lines in this contest. I would expect this court to rule in my favor or rule against me on both. But in terms of prejudice, I would also analogize to the ineffective assistance based on a motion to suppress, for instance. That's not about the result of the trial for prejudice. That's about whether or not the motion would have been granted. There is a more than reasonable probability that Mr. King would have been tried without shackles, especially considering that the only thing that we're told from Judge Schaefer is that he had every time he was in court. Second of all, the state says that I'm not challenging the sufficiency of the evidence on any of these convictions. I would point this court to issue 2. But I would mostly just like to finish here with the language from Justice McDade's dissent that I quote in my reply brief. Actually, before I get to that, I would like one more time to address the sufficiency of the record. This is an uncontroverted ruling from the trial court that was never revisited. What the state is asking this court to rule is essentially, for instance, if the trial court had granted a motion to exclude witnesses. The state is now saying in order to make sure that that ruling was followed, the trial court would have to begin each hearing with, I see that Ms. Jones is still not in the back of the courtroom. I see that my previous rulings are still being obeyed. This is absolutely a complete record as to the leg shackles. I acknowledge that there's ambiguity as to the handcuff, but he was restrained. He was in leg shackles. Judge Schaefer never revisited that. But turning to Justice McDade's language, I have absolutely no doubt that if it was me on trial, there would have been a hearing, no matter the charges. I have absolutely no doubt that if it was Ms. Connelly or any of your honors there, anyone that the court deemed worthy of a hearing, there would have been a hearing. The fact that Mr. King did not receive the hearing, that's the due process violation right there. That's the offense to the dignity of the proceedings right there. The fact that were serious charges against him, and I do acknowledge the severity of the charges against him. I'm not challenging the sufficiency of the evidence as to the murders, but he has a right to a fair trial. He has a right to stand as a free man until the verdict is handed down, barring a specific showing of manifest need made on the record by the court. He was denied that and I would ask this court to give him the fair trial that he is owed as a constitutional right. The way to prevent these retrials from happening is to respect defendants' rights when they happen. Thank you. Seeing no further questions, the court will take this matter under advisement and the court stands in recess.